COHEN, J.
Leartis McNeil appeals his convictions of burglary of a dwelling with an assault or battery, aggravated battery, aggravated assault, and grand theft. He raises two issues on appeal, only one of which merits discussion. We agree with McNeil that the trial court erred in allowing the State to exercise a peremptory challenge after the trial had begun. Accordingly, we reverse and remand for a new trial.
The record reflects that during jury selection, a list of both State and defense witnesses was read to the venire. The panel was then asked, “Are any of you related by blood or marriage to any of these potential witnesses, or do any of you know any of them through any business or social relationships?” Prospective juror Erik Perez, who was eventually selected and sworn as a juror, did not indicate that he knew any of the witnesses.
Trial proceeded and McNeil’s son, Nicko, was called to testify for the defense. During a recess in that testimony, Perez informed the courtroom deputy that he recognized Nicko. The trial judge informed the lawyers about Perez’s disclosure, and the lawyers were given an opportunity to question Perez outside the presence of the other jurors.
During questioning, Perez stated that he knew Nicko only in Perez’s capacity as a physical therapist for a local high school. He had treated Nicko for football-related injuries on approximately five or six occasions. Perez indicated that since he did not know McNeil personally, he would remain neutral. However, Perez obliquely expressed some concern about the possibility that Nicko would recognize him as having served as a juror. Specifically, he said: “I mean, I guess, in the future, if [I] *627 see [Nicko] like at a movie theater or something, you know, I don’t know what that interaction would be like.” In response to follow-up questions by the trial judge, Perez reiterated that knowing the witness would not impact his ability to be fair and impartial. The trial court denied the State’s request to strike Perez for cause, but allowed the State to use a peremptory challenge over the defense’s objection. On appeal, McNeil argues that the trial court erred in removing Perez.
Our analysis must begin with the Florida Rules of Criminal Procedure. Florida Rule of Criminal Procedure S.310, entitled “Time for Challenge,” provides:
The state or defendant may challenge an individual prospective juror before the juror is sworn to try the cause; except that the court may, for good cause, permit a challenge to be made after the juror is sworn, but before any evidence is presented.
Fla. R. Crim. P. 3.310 (emphasis added). This rule makes explicit that a party may not exercise a peremptory or for-cause challenge after evidence has been presented. Accordingly, it was impermissible for the trial court in this case to allow the State to peremptorily challenge Perez in the middle of the defense’s case-in-chief.
This rule does not leave a party without recourse, however, in situations where it is discovered that a juror has committed misconduct. Rule 3.280 requires the trial court to replace, with an alternate, jurors who, “prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties.” Fla. R. Crim. P. 3.280(a); accord Nicholas v. State, 47 So.3d 297 (Fla. 2d DCA 2010). For example, a juror is properly excused when it is discovered mid-trial that the juror was untruthful or inaccurate in answering questions during voir dire. See, e.g., Nicholas, 47 So.3d at 303 (“[A] juror’s concealment of material information during voir dire provides good cause for removal of that juror mid-trial and substitution with an alternate juror.”).
The trial judge is vested with discretion in determining whether a juror has engaged in misconduct that warrants removal from the jury. Dery v. State, 68 So.3d 252 (Fla. 2d DCA 2010); see also Wilson v. State, 608 So.2d 842, 843 (Fla. 3d DCA 1992) (holding that trial court did not abuse discretion in removing juror who failed to disclose her ill feelings toward the State Attorney’s Office during voir dire). However, that discretion -is not without bounds. For instance, in Dery, a juror failed to disclose- that she had taken a course that included the study of DNA evidence, and the State’s questions during voir dire required her to disclose this training. Upon learning mid-trial that the juror had taken a seventeen-week course in forensic science, the defense sought to remove her from the jury. The trial court’s refusal to do so was held to be an abuse of discretion. Dery, 68 So.3d at 255; see also Washington v. State, 955 So.2d 1165 (Fla. 1st DCA 2007) (holding that trial court committed reversible error by removing a juror who, despite the court’s invitation to ask questions, was perceived to be asking too many questions, some of which appeared hostile to the State).
We agree with McNeil that the facts of Bigham v. State, 995 So.2d 207 (Fla.2008), are analogous to those of the instant case. In Bigham, the defense sought removal of a juror who had not disclosed knowing one of the State’s witnesses. The trial court refused to remove the juror. On appeal, the supreme court affirmed the trial court’s ruling:
On the record it appears that the juror’s failure to disclose his knowledge of a State witness was not material. Rather, the record reflects that his familiarity with the State’s witness was casual and *628 distant. On his own initiative, the juror stated that he did not know [the] police detective’s last name, but recognized him as someone who had been a past acquaintance. He explained that he worked security at a bar that the detective frequented five to seven years prior to the trial. He further explained that any conversation between the two had been brief and did not reflect the detective’s work. Secondly, the juror did not attempt to conceal the information and came forward as soon as it was apparent that he did, in fact, recognize the officer. Finally, the juror answered the question posed during voir dire correctly, because he was actually asked if he was related to or close friends with any law enforcement officers, and even given his passing acquaintance with [the State witness], there was no evidence that he was related to or close friends with him.
Id. at 215 (citation omitted).
Similarly, in the instant case, the jurors were asked: “Are any of you related by blood or marriage to any of these potential witnesses, or do any of you know any of them through any business or social relationships?” Perez was not related to Nicko, and his past treatment of Nicko as a physical therapist could fairly be considered neither a business nor social relationship. As in Bigham, the relationship was casual and distant. Moreover, the fact that the trial court denied the State’s motion to strike Perez for cause indicates that the trial court believed Perez’s testimony that he did not recognize Nicko’s name when read during voir dire and that he could remain impartial. The trial court made explicit that it was allowing the State to exercise a peremptory challenge to strike Perez. Stated differently, implicit in the trial court’s ruling that the State could not challenge Perez for cause was a finding that Perez either did not commit misconduct or that any misconduct did not require removal. Accordingly, the trial court erred in allowing the State to strike Perez using a peremptory challenge after the trial had begun.
The more difficult question is whether the error requires reversal. The failure to grant a proper motion to strike a juror who committed misconduct has often resulted in the granting of a new trial. See, e.g., Dery, 68 So.3d at 255 (reversing and remanding for new trial where trial court improperly denied defense motion to strike juror who was not candid during voir dire); Mobley v. State, 559 So.2d 1201, 1202 (Fla. 4th DCA 1990) (same). On the other hand, a majority of courts have concluded that improper dismissal of a juror is harmless where that juror was replaced by an alternate who was present for the entire trial. See, e.g., Ortiz v. State, 835 So.2d 1250, 1251 (Fla. 4th DCA 2003) (holding that replacing a sleeping juror was harmless where the juror was replaced by an alternate (citing Orosz v. State, 389 So.2d 1199, 1200 (Fla. 1st DCA 1980)); Graham v. State, 470 So.2d 97, 98 (Fla. 1st DCA 1985) (stating, in dicta, that any error in dismissing juror for cause would be harmless because juror was replaced by alternate juror who was present for entire trial). But see Washington, 955 So.2d at 1173 (“It would make little sense to conclude that it is error to reconfigure the jury panel'based on nothing more than the perceived impressions a juror holds about the case, but that the error does no harm because the parties had previously selected the alternate juror. In this situation, the reconfiguration of the jury panel is the very error that must be corrected.”).
We have neither found nor been directed by the parties to any case that involved a trial court improperly allowing a party to use a peremptory challenge mid-trial. Allowing the exercise of peremptory challenges to continue into the trial would encourage tactical gamesmanship, a result *629 that we are unwilling to condone and one for which we feel compelled to provide a remedy. Accordingly, we reverse.
REVERSED and REMANDED FOR NEW TRIAL.
EVANDER and WALLIS, JJ„ concur.