# Third District Court of Appeal

## State of Florida

Opinion filed May 27, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-0373
Lower Tribunal No. 22-19395-CA-01
_____

**Alan Kent Little,**
Appellant,

vs.

**Bath & Kitchen Boutique, LLC, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Beatrice Butchko Sanchez, Judge.

Barakat + Bossa PLLC, and Jocelyne A. Macelloni and Nicholas J. Diego, for appellant.

Alexander Appellate Law P.A., and Samuel Alexander (Jacksonville), for appellee.

Before SCALES, C.J., and GORDO, and GOODEN, JJ.

SCALES, C.J.

In this breach of contract action, appellant Alan Kent Little, the plaintiff/counter-defendant below, appeals a January 29, 2025 final judgment ("Fees Judgment") awarding attorney's fees and costs to the defendant/counter-plaintiff below, appellee Bath & Kitchen Boutique, LLC ("BKB"). Finding no abuse of discretion,[1] we affirm without discussion (i) the trial court's award of contractual attorney's fees to BKB for the time spent litigating the parties' breach of contract claims, and (ii) the trial court's award of costs. For the reasons discussed herein, we also affirm the trial court's award of contractual attorney's fees for the legal work related to Little's prejudgment writ of garnishment, granted pursuant to the reciprocity provision of section 57.105(7) of the Florida Statutes.[2] But we reverse the

[1] "Both the fee award and application of a multiplier are reviewed for an abuse of discretion," Certain Underwriters at Lloyd's London v. Candelaria, 339 So. 3d 463, 467 (Fla. 3d DCA 2022), and therefore must be supported by competent, substantial evidence. See SafePoint Ins. Co. v. Castellanos, 394 So. 3d 731, 734 (Fla. 3d DCA 2024). Likewise, "[a] trial court's award of costs is reviewed by appellate courts for an abuse of discretion." Albanese Popkin Hughes Cove, Inc. v. Scharlin, 141 So. 3d 743, 745 (Fla. 3d DCA 2014).

[2] The trial court determined that Florida's Garnishment Act provided an independent basis for BKB to recover fees related to the prejudgment writ of garnishment. See § 77.031(3), Fla. Stat. (2023) (allowing for the "attorney's fees that the defendant sustains in consequence of the plaintiff's improperly suing out the writ of garnishment"). Given our resolution of this appeal, we need not – and therefore do not – address the trial court's finding that BKB was entitled to fees under Florida's Garnishment Act because the writ was "improperly sued out."

trial court's application of a 1.5 contingency risk multiplier to the court's award of contractual attorney's fees because a multiplier is not supported by competent, substantial evidence.

## I.     RELEVANT FACTS AND PROCEDURAL HISTORY

### A. The Parties' Agreement, the Contract Amendment, and the Instant Litigation

In May 2021, the parties executed an agreement calling for BKB to design and renovate the master bathroom of Little's Miami Beach home. When a portion of BKB's work failed to pass the City of Miami Beach's final inspection, the parties executed a Contract Amendment that gave BKB additional time to pass final inspection beyond which BKB would owe Little a $1,000 per day fine. The Contract Amendment contained a unilateral attorney's fees provision that, in relevant part, provided: "[BKB] agrees to pay One Hundred Percent (100%) of [Little's] legal fees for the preparation of this Amendment and all of [Little's] legal fees required to enforce the Agreement and this Amendment." BKB's work passed final inspection sixty-seven days beyond the Contract Amendment's completion date.

On October 10, 2022, Little filed the instant breach of contract action against BKB in the Miami-Dade County circuit court. Little's complaint sought $67,000 as liquidated damages for the additional sixty-seven days it took to for BKB's work to pass final inspection beyond the Contract Amendment's

stated completion date. BKB answered Little's complaint and counterclaimed against Little, alleging: (i) it was entitled to a judgment declaring that the Contract Amendment's $1,000 per day fine was an unenforceable penalty (count I); and (ii) Little had breached the parties' agreement by failing to pay BKB for the work it had performed (count II). Both parties alleged entitlement to fees based on the Contract Amendment's fee provision. BKB's pleading alleged that the provision was made reciprocal by section 57.105(7) of the Florida Statutes.[3]

B. *Little's Prejudgment Writ of Garnishment, the Discovery Order, and the Certiorari Petition*

In early March 2023, Little sought and obtained in the lower court action the issuance of a prejudgment writ of garnishment in the amount of $35,000. See § 77.031, Fla. Stat. (2023). BKB then moved to dissolve the prejudgment writ, see § 77.07(1), Fla. Stat. (2023), and Little opposed the motion. While

---

[3] The statute provides:

> (7) If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract. This subsection applies to any contract entered into on or after October 1, 1988.

§ 57.105(7), Fla. Stat. (2021).

4

the lower court held two hearings on BKB's motion to dissolve the prejudgment writ of garnishment, the record reflects that the proceedings thereon never concluded and, consequently, the trial court never adjudicated BKB's motion to dissolve the writ. Little filed a notice below on September 6, 2023, extending the writ for an additional six months. See § 77.07(5), Fla. Stat. (2023).

Meanwhile, with a prejudgment garnishment order in hand, Little garnished BKB's checking and savings accounts at JP Morgan Chase Bank ("JP Morgan"). When JP Morgan responded that BKB's two bank accounts contained just $25,526.16, Little subpoenaed JP Morgan *duces tecum*, demanding that JP Morgan produce six months of account statements for every BKB account at JP Morgan. When the trial court denied BKB's motion for a protective order and ordered JP Morgan to produce the requested account statements, BKB filed a petition for writ of certiorari in this Court ("BKB I") challenging the lower court's discovery order.

This Court granted the certiorari petition and quashed the discovery order related to Little's prejudgment writ of garnishment. See Bath & Kitchen Boutique, LLC v. Little, 390 So. 3d 44, 46 (Fla. 3d DCA 2023). In BKB I, both parties filed motions for appellate level fees based on the Contract Amendment's attorney's fees provision. This Court, by a separate fees order,

5

denied Little's appellate fees motion, but *conditionally* granted BKB's motion for appellate attorney's fees "provided [BKB] prevails in the action below, *and the trial court finds a valid and enforceable prevailing party attorney's provision in the contract between the parties*." (Emphasis added).

### C. The Summary Judgment Order, Little's Voluntary Dissolution of the Prejudgment Writ of Garnishment, and the Parties' Settlement

In the interim, the parties filed competing motions for summary judgment on Little's breach of contract claim and BKB's counterclaim for declaratory judgment regarding the validity of the Contract Amendment's $1,000 per day fine. On November 29, 2023, the trial court entered partial summary judgment in BKB's favor, concluding that the daily fine was an unenforceable penalty.

On January 16, 2024, Little filed a notice voluntarily dissolving the prejudgment writ of garnishment directed to JP Morgan. And, on March 16, 2024, BKB filed a motion below (i) notifying the trial court that the parties had entered a settlement agreement on BKB's remaining counterclaim seeking payment for its renovation work, wherein Little had generally stipulated to BKB's entitlement to attorney's fees and costs, and (ii) requesting that the trial court conduct an evidentiary hearing to set the amount of attorney's fees and costs.

*D. Attorneys' Fees*

The trial court held a two-day evidentiary hearing on the amount of attorney's fees to award to BKB. Because Little stipulated that the hourly rates charged by BKB's trial and appellate attorneys were reasonable, the fees hearing focused on the number of hours expended by BKB's attorneys in litigating the case and whether a contingency risk multiplier should be applied to the fees award. In addition to considering the numerous exhibits filed prior to the hearing, the trial court heard live testimony from BKB's owner, BKB's trial attorney, and the parties' fees experts. The court also heard legal arguments from the parties' counsel as to whether the fees award should include amounts for the time BKB's trial and appellate attorneys spent litigating issues related to the prejudgment writ of garnishment.

On January 29, 2025, the trial court entered the challenged Fees Judgment that, *inter alia*, awarded BKB attorney's fees for the time (both trial and appellate) spent litigating issues related to the prejudgment writ of garnishment. The trial court found such fees awardable under both (i) section 77.031(3),[4] and (ii) the Contract Amendment's fee provision made reciprocal by section 57.105(7). The trial court applied a 1.5 contingency risk multiplier to the fees award. Little timely appealed the Fees Judgment.

---

[4] See footnote 2, *supra*.

7

## II. ANALYSIS

We first address Little's argument that the trial court erred by awarding fees to BKB for litigating issues related to Little's prejudgment writ of garnishment under the fees provision of the Contract Amendment made reciprocal by section 57.105(7). We then address Little's argument that the trial court erred by applying a 1.5 contingency risk multiplier to the fees award.

*A. Fees Incurred in the Prejudgment Writ of Garnishment Proceedings*

1. <u>Law of the Case</u>

BKB argues that this Court's fees order in <u>BKB I</u> constitutes "law of the case" such that BKB is entitled to such attorney's fees on this basis alone. Under the law of the case doctrine, our rulings on issues of law "'*actually presented and considered* on a former appeal' govern the case throughout the remainder of the litigation." <u>Hertz Corp. v. Auto Club Grp., Inc.</u>, 421 So. 3d 761, 764 (Fla. 3d DCA 2025) (quoting <u>SC Mota Assocs. Ltd. P'ship v. Mota Pizza Rustica Corp.</u>, 358 So. 3d 823, 826 (Fla. 3d DCA 2023)). This includes issues of law that were "implicitly addressed or necessarily considered" by us in a prior appeal. <u>Id.</u> (quoting <u>City of Hollywood v. Witt</u>, 939 So. 2d 315, 318 (Fla. 4th DCA 2006)).

In BKB I, this Court quashed an impermissible discovery order in aid of execution with respect to a prejudgment writ of garnishment obtained by Little against BKB's JP Morgan bank accounts. 390 So. 3d at 46. Both parties sought appellate fees based on the Contract Amendment's attorney's fees provision, with BKB claiming the provision was made reciprocal by section 57.105(7). But because the subject provision's validity and enforceability in the context of a prejudgment writ of garnishment had yet to be raised below and determined by the trial court in the first instance, the BKB I court granted BKB's appellate fees motion *conditioned* on the trial court making those two legal determinations at the proper time in this ongoing case. This Court's *conditional* grant of appellate fees in BKB I plainly did not determine – either expressly, implicitly, or necessarily – the validity and enforceability of the subject attorney's fees provision. Hence, the fees order in BKB I does not constitute law of the case so as to govern the outcome of this case.

As the trial court has now, in the first instance, determined that the subject fees provision (i) is valid and enforceable, and (ii) section 57.105(7) reciprocity applies to entitle BKB to recover the attorney's fees it expended with respect to the prejudgment writ of garnishment, this issue is now ripe for our appellate review.

9

2. The Ham case and the applicability of section 57.105(7) reciprocity to the Contract Amendment's fees provision[5]

The Contract Amendment contained a unilateral attorney's fees provision obligating BKB to pay "all of [Little's] legal fees required to enforce the Agreement and this Amendment." Section 57.105(7) rendered this fees provision valid and enforceable as to the parties' underlying contract claims regarding the validity of the $1,000 per day fine. The issue before us is whether the trial court, relying upon the Florida Supreme Court's opinion in Ham v. Portfolio Recovery Associates, LLC, 308 So. 3d 942 (Fla. 2020), erred in determining that, under section 57.105(7), the Contract Amendment's fees provision entitled BKB also to recover the trial and appellate level attorney's fees BKB expended regarding Little's prejudgment writ of garnishment.

a. The Ham case

---

[5] "The effect of section 57.105(7) is to statutorily transform a unilateral attorney's fees contract provision into a reciprocal provision." Bank of N.Y. Mellon Tr. Co., N.A. v. Fitzgerald, 215 So. 3d 116, 119 (Fla. 3d DCA 2017). We review de novo a trial court's determination as to whether section 57.105(7) reciprocity applies to a contract's fee provision. See Fla. Cmty. Bank, N.A. v. Red Rd. Residential, LLC, 197 So. 3d 1112, 1114 (Fla. 3d DCA 2016) (observing that whether a prevailing party is entitled to attorney's fees based on interpretation of a contractual attorney's fees provision and application of section 57.105(7) presents a pure question of law).

In Ham, an assignee of credit card debts sued the debtors, not for breach of the underlying credit card contracts, but for common law account stated. Id. at 943. The underlying credit card contracts contained unilateral attorney's fees provisions authorizing the card issuer to recover attorney's fees if the creditor used the services of an attorney to collect the debtors' accounts. Id. at 944. The debtors ultimately prevailed in the assignee's account stated actions and sought attorney's fees based on the contracts' attorney's fee provisions made reciprocal by section 57.105(7). Id. The assignee argued that because its account stated actions were not for breach of the credit card contracts, section 57.105(7) reciprocity was inapplicable. Id.

In its ruling for the debtors, the Florida Supreme Court explained that, based on the statute's plain language, section 57.105(7) reciprocity applies when: (i) the contract includes "a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract," and (ii) the other "party prevails in any action, whether as plaintiff or defendant, with respect to the contract." Id. at 947 (quoting § 57.105(7), Fla. Stat.). The Ham court explained further that section 57.105(7)'s "with respect to the contract" language requires inquiry into the claims actually litigated and the relationship of those claims to the contract:

The phrase "with respect to" is a longer way of saying "respecting." Respecting means "with regard or relation to: REGARDING, CONCERNING." Webster's Third New International Dictionary Unabridged 1934 (1993 ed.). The scope of "with respect to" is necessarily broader than terms such as "based on," "under," or "pursuant to." "With respect to" in this context requires a relationship with the contract containing a unilateral fee provision that may be different than and not as immediate as the relationship that would be required if "based on," "under," or "pursuant to" were the operative language. "[W]ith respect to" is inclusive of those other terms, but it sweeps more broadly.

Id. at 948.

The Ham court held that, while the assignee's account stated actions were not "based on," "under," or "pursuant" to the underlying credit card contracts, there was still a "a clear and direct relationship between the credit contracts and the account stated claims." Id. at 949. Observing that the debtor-creditor relationship was "predicated on the credit card contracts" and that "[w]ithout those contracts, there would have been no business relationship or previous transactions," the Ham court explained that "[t]he accounts that the [assignee] sought to collect came into existence as a result of the operation of those credit card contracts." Id. It therefore was "a fair reading to say that the account stated actions on which the debtors prevailed were actions 'with regard or relation to' those credit card contracts[.]" Id. In sum, the Ham court found that the debtors prevailed in common law actions with respect to credit card contracts containing unilateral attorney's fee

provisions, and that section 57.105(7) reciprocity applied such that the debtors were entitled to fees. Id. at 950.

b. The instant case

We similarly find that BKB prevailed in the garnishment proceedings and that those proceedings were "with respect to" the parties' underlying agreement containing the unilateral attorney's fees provision. There is a clear and direct relationship between the proceedings occasioned by Little's prejudgment writ of garnishment and the parties' contract litigation. Indeed, but for Little's lawsuit alleging that BKB had breached the parties' agreement, there would have been no prejudgment garnishment proceedings.

A prejudgment writ of garnishment "is a civil remedy available to a party to secure the anticipated money judgment the party ultimately expects to recover." Garel & Jacobs, P.A. v. Wick, 683 So. 2d 184, 186 (Fla. 3d DCA 1996). A garnishment proceeding may be "separate and distinct" from the main action that establishes the debt, Space Coast Credit Union v. The First, F.A., 467 So. 2d 737, 739 (Fla. 5th DCA 1985), but the prejudgment writ is still "ancillary to the main action." Wick, 683 So. 2d at 186; see Ancillary, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "ancillary" to mean "[s]upplementary; subordinate").

The Contract Amendment's attorney's fees provision entitled Little to recover the attorneys' fees he incurred "to enforce" the parties' agreement. Little obtained a prejudgment writ of garnishment below in anticipation of Little securing a money judgment against BKB on his breach of contract claim. But BKB won summary judgment on Little's contract claim and Little voluntarily dissolved the writ. BKB, therefore, prevailed below on garnishment proceedings "with respect to" the parties' agreement. Accordingly, we affirm the trial court's determination that the fees provision in the Contract Amendment, made reciprocal by section 57.105(7), entitled BKB to an award of attorney's fees for the legal work related to the prejudgment writ of garnishment.

*B. The Contingency Risk Multiplier*

Little argues that the trial court's application of a 1.5 contingency risk multiplier to the fees award is not supported by competent, substantial evidence. We agree.

Factors the trial court must consider in determining whether to apply a contingency risk multiplier are: "(1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in [Florida Patient's Compensation Fund

14

v. Rowe, 472 So. 2d 1145 (Fla. 1985)] are applicable, especially the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client." Joyce v. Federated Nat'l Ins. Co., 228 So. 3d 1122, 1128 (Fla. 2017) (quoting Standard Guar. Ins. Co. v. Quanstrom, 555 So. 2d 828, 834 (Fla. 1990)).  The focus of the first factor is to assess "whether there are attorneys in the relevant market who both have the skills to handle the case effectively and who would have taken the case absent the availability of a contingency fee multiplier." Id. at 1135. "If there is no evidence that the relevant market required a contingency fee multiplier to obtain competent counsel, then a multiplier should not be awarded." USAA Cas. Ins. Co. v. Prime Care Chiropractic Ctrs., P.A., 93 So. 3d 345, 347 (Fla. 2d DCA 2012); see also TRG Columbus Dev. Venture, Ltd. v. Sifontes, 163 So. 3d 548, 552 (Fla. 3d DCA 2015) ("Appellate courts have found that Quanstrom's first prong is not satisfied where such evidence is absent."). To support this first factor, the evidence must establish *without the need for inference* that without the risk-enhancement multiplier, the client would have faced substantial difficulties in finding counsel in the relevant market. See Foot & Ankle Ctr. of Fla., LLC v. Vargas, 412 So. 3d 825, 829 (Fla. 6th DCA 2024).

Here, both BKB's counsel and expert witness testified that, in the construction context, lawyers in the relevant market rarely undertake breach of contract actions on a contingency fee basis. BKB, however, adduced no direct evidence that, absent the availability of a contingency risk multiplier, BKB would have faced substantial difficulties finding an attorney to represent it in this case. That is, there was no direct evidence that BKB's counsel was the only competent counsel in the relevant market, or in the alternative, that no competent counsel would have taken the case if the multiplier was unavailable. See Universal Prop. & Cas. Ins. Co. v. Deshpande, 314 So. 3d 416, 421 (Fla. 3d DCA 2020).

Given the evidence adduced below on the multiplier issue, the trial court's finding on the first Quanstrom factor required the court to make an inference, not supported by direct evidence, that BKB was able to find counsel only because of the availability of a multiplier. Because the trial court's finding was not supported by the requisite competent, substantial evidence, see Id.; Vargas, 412 So. 3d at 829, we reverse the trial court's application of the 1.5 contingency risk multiplier to the fees award.

## III.  CONCLUSION

We affirm those portions of the Fees Judgment awarding BKB costs and contractual attorney's fees incurred for the time spent litigating the

16

parties' breach of contract claims and the garnishment proceedings. We reverse that portion of the Fees Judgment applying a contingency risk multiplier to the fees award and remand for entry of an amended judgment consistent with this opinion.

Affirmed in part; reversed in part and remanded with instructions.